**Emil E. HOECHST et al., Appellants,**

**v.**

**Bill BANGERT et al., Respondents.**

**No. 53622.**

Supreme Court of Missouri,
Division No. 2.

April 14, 1969.

Motion for Rehearing or to Transfer to
Court En Banc Denied May 12, 1969.

Flynn, Parker & Badaracco, Norman C. Parker, St. Louis, for plaintiffs-appellants.

T. E. Lauer, Columbia, Edward F. O'Herin, O'Herin & Newberry, Malden, for respondents.

PRITCHARD, Commissioner.

Under Count III of their petition, plaintiffs seek to have a recorded instrument entitled "Dedication" declared void as it pertains to a strip of land 100 feet wide across plaintiffs' some 1500 acres of land which lies east of the Missouri River in St. Louis County, Missouri. The strip in question is north of Interstate Highway 70, and runs generally in a north-south direction. At its northerly end it intersects old St. Charles Rock Road. Count I concerned the cancellation of an option to purchase agreement; Count II was for a money judgment on that agreement, the judgment on neither of these counts being appealed by either party. The further order under Count III

enjoined plaintiffs "from interfering with the use of said Creek Road by defendants Bill Bangert and Rosemary Bangert, R. C. Can Company and all employees and customers thereof, and the public in general." Plaintiffs say the injunctive relief was not requested by defendants in their pleadings, and was beyond the trial court's jurisdiction.

On November 27, 1964, the dedication instrument (Plaintiffs' Exhibit 4 as recorded) was executed by Bill Bangert and Rosemary Bangert, his wife; and Emil E. Hoechst and Elsa Hoechst, his wife. The exhibit recites it to be in consideration of the mutual benefits accruing to the parties, who "do hereby dedicate to public use forever, for highway purposes, a strip of land 100 feet wide, the center line of which is described as follows:". Paragraph 1 of the description of the strip is of land owned by the Bangerts going southwesterly, then southerly from Interstate 70 to Creve Coeur Mill Road, which is approximately one and three fifths miles south of Interstate 70. Paragraph 2 describes the strip as being on land owned by the Hoechsts, and is here in issue.

Plaintiffs claim that the grant of the strip (Creek Road) for highway purposes could not be a statutory dedication because it does not comply with applicable statutes and ordinances requiring approval and recording of subdivision plats. Cited are §§ 64.070 and 228.010 et seq., RSMo 1959, V.A.M.S., and St. Louis County Revised Ordinance, §§ 1005.030 and 1005.040. Defendants say the contention is without merit because Missouri courts have repeatedly held that where acts of dedication fail to comply with applicable statutes and ordinances, the acts may still amount to a common-law dedication.

The area here upon which Creek Road was built was not incorporated on November 27, 1964. An attempt was made to annex it by the Village of Champ, but that annexation was held to be invalid in State ex inf. Eagleton v. Champ, Banc, Mo., 393 S.W.2d 516, 533 [16]. The St. Louis

County Ordinance, § 1005.030, supra, defines as a subdivision of land, "(3) dedication or establishment of a road, highway or street through a tract of land, regardless of area." § 1005.040 requires that "Every subdivision of land within the unincorporated area of St. Louis County shall be shown upon a plat and submitted to the Commission for approval or disapproval." It is then required that the County Court consider any plan approved by the Commission, and approve or disapprove the same. The County Council can approve a plan which has not been approved by the Commission, or if there are any written protests filed, only in accordance with the provisions of § 64.070, supra. § 228.010 et seq., supra, sets forth the procedure in county courts to establish public roads, with provisions for notice and hearing thereon. The question presented, as argued by plaintiffs, is whether these statutory and ordinance provisions are the exclusive methods of establishing or dedicating a roadway. Defendants concede that plaintiffs are correct in their assertion that the dedication instrument constituted an offer to dedicate to the public the roadway, and that such offer was required to be accepted by or on behalf of the public; and that the offer was not accepted by St. Louis County.

In the case of Connell v. Jersey Realty & Investment Co., 352 Mo. 1122, 180 S.W. 2d 49, 53, although there it was held under the facts that there was no unequivocal dedication to public use, or an intention to do so, the rules of law concerning common-law dedications are set forth: "We deduce from the law that in order to establish a common law dedication it must be shown: (1) That the owner, by his unequivocal action, intended to dedicate to public use; (2) that the land so dedicated must be accepted by the public; and (3) that land so dedicated must be used by the public. A common law dedication, sometimes termed implied dedication, operates not as a grant, but on the principle of estoppel." In this case, there exists an express, unequivocal intention on the part of plaintiffs (along with defendants) to dedicate: "do hereby *dedicate to public use forever, for highway purposes,* a strip of land 100 feet wide, * * *." (Italics added.) In City of St. Charles v. De Sherlia, Mo.App., 308 S.W. 2d 456, 459, a deed conveying a lot had in it also an agreement by grantor "to open and dedicate and by these presents does open and dedicate to the public a strip of ground for a public street." Citing Whyte v. City of St. Louis, 153 Mo. 80, 54 S.W. 478, and Poage v. Oser, Mo.App., 6 S.W.2d 1009, the court held that the recitals in the deed and in the plat attached thereto were sufficient to warrant a finding that the grantor intended to dedicate the land in question as a public street.

In Minium v. Solel, Mo., 183 S. W. 1037, the suit was for the establishment of an alley, which had been used as such for many years. It was said there, loc. cit. 183 S.W. 1040 [5, 6], "And it does not require a municipal or public act to indicate the acceptance of the easement. The continued use by the public for the purpose of travel will have that effect. (Citing cases.) The rule is, so far as applicable to this case, that when the proprietor does some act which clearly indicates his intention to dedicate land to the use of the public as a street or alley, and the public by its act clearly indicates its purpose to take and accept the dedication and actually uses it for the purpose indicated for such a length of time as to show its intention to accept the offer implied by the act of the proprietor, these concurrent acts constitute a complete common-law dedication independently of the operation of the statute of limitations." Hill v. City of Sedalia, 64 Mo.App. 494, 499, had a similar statement: "No specific length of possession is necessary to constitute a valid dedication; all that is required is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment." Again in Poage v. Oser, supra, loc. cit. 6 S.W.2d 1011 [3],

it is said, "Where the intention to dedicate is manifest, no user for any definite period is necessary in order to show acceptance by the public." It is manifest from the foregoing cases, first, that for a common-law dedication the approval of the St. Louis County authorities was not required; secondly, the intention of plaintiffs to make such dedication is clear from the instrument itself; thirdly, the dedication is not required to be accepted by governmental authority, so long as it in fact is accepted by the public as demonstrated by the use made of it, which (fourthly) need not be for the statutory period under § 516.010, RSMo 1959, V.A.M.S.

█ That the public in this case did in fact accept and use Creek Road is fully supported by the evidence. (See Baker v. Vanderburg, 99 Mo. 378, 12 S.W. 462, 465.) After the dedication instrument was signed, Bill Bangert proceeded, in December, 1964, to construct the road, with full knowledge thereof by plaintiffs. He completed it about February 1, 1965, and expended in excess of $30,000 thereon for grading, engineering fees and materials, including a double sealed asphalt surface over a rolled stone base. Clarence F. Mittler used the road thereafter two to four times a week; the employees of R. C. Can Company, especially those residing in the St. Charles area, used the road constantly in going to and from work. Gerald Drecksage used it a hundred times in his farming operation nearby before the road was closed. Archie Null used it also and saw other people using it, such as the R. C. Can Company trucks, its employees, rock and sand trucks, and neighbors in the area. Victor D. deLiniere testified as to his own use of the road all of 1965 and early in 1966, until it was blocked. Some twenty trucks a day used the road to take in materials to the R. C. Can Company. All of the extensive public use of Creek Road, indicating public acceptance, distinguishes plaintiffs' cited cases of Hayes v. Kansas City, 294 Mo. 655, 242 S.W. 411 (where the street in question was never open, and when platted was two miles away from Kansas City which could not, as held, accept the offer of dedication); City of St. Louis v. St. Louis University, 88 Mo. 155 (where there was no formal act of acceptance by the corporate city, nor any public use shown); and Smith v. City of Hollister, 241 Mo.App. 379, 238 S.W.2d 457 (where there was no evidence that the streets were accepted by the public in any manner).

█ It is suggested in plaintiffs' brief that the conduct in July, 1967, of Bill Bangert in moving earth across Creek Road south of Interstate 70 supports plaintiffs' contention that the instrument is not one of dedication to public use. Bangert's blocking that portion of the road was apparently done to protect lands in the 1967 high water. It was on the right of way of Interstate 70, and although the earth remained there until the date of trial, the act was initially done after plaintiffs had blocked the road to the north. At any rate, it is not the defendants who seek to have Creek Road declared not to have been dedicated, and the suggestion is without merit.

█ There was a side agreement in letter form signed by plaintiffs and Bill Bangert (alone) to that of the dedication instrument. Mr. Hoechst testified that he insisted that the side agreement be made, its principal purpose being the protection of plaintiffs' lands by levees and pumps. Plaintiffs say the side agreement made the dedication conditional, and defendants' failure to meet the conditions authorized plaintiffs to restore a levee across Creek Road and terminate any dedication. It is doubtful that the side agreement, not being incorporated in the dedication instrument (which was not conditional), could limit plaintiffs' intention to dedicate a public road and thus affect the public's right. But in any event, the evidence (some conflicting) shows that Bill Bangert substantially met the provisions for the protection of plaintiffs' lands, as the trial court found. As provided in the side agreement, the floodgate at Old St. Charles Highway bridge was completed in the early part of

1964 (before the document was signed on November 27, 1964). No electric pump was installed to drain storm water ponding in the old creek after heavy rains, but a diesel pump was there installed. Three 16-inch Gould pumps were installed at the confluence of the Barge Canal (south of Interstate 70) in the early part of 1967 when there was high water. The levees on the Barge Canal were completed. The outer ramps for the proposed interchange between Interstate 70 and Creek Road were not constructed, but this paragraph 5 of the side agreement provides that it shall be done "within the times specified in the agreement between Bill Bangert and R. C. Can." Bangert testified that his agreement with R. C. Can Company provided that the ramps be completed five years after the commencement of the lease, which was December 29, 1965. In the second unnumbered paragraph of the side agreement, Mr. Hoechst states that it is his understanding that as consideration for granting the easements Bill Bangert was to escrow sufficient funds from the refinancing of the R. C. Can Company plant building to guarantee the construction of the above levee facilities. Bangert testified that there had never been any refinancing of that plant to the date of trial, and it is thus obvious that any obligation to deposit in escrow funds from that source has not arisen.

In Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332, the issue was whether an athletic recreational center could be constructed on land acquired pursuant to an ordinance to purchase land for a public park. The court held that it could be done because when land is purchased or condemned by a city greater liberality of construction is allowed. The court did remark that "Where the land has been dedicated to public use as a park by private grant with conditions annexed, the conditions must be complied with." (Loc. cit. 142 S.W.2d 335.) In Creamer v. McCune, 7 Mo.App. 91, a reservation of a strip of ground was held not to imply a dedication of the strip to public use before fulfillment of the condition that other owners shall give 10 feet along the boundaries of a lot for an alley. In Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552, there was no written instrument of dedication, but the evidence showed an intention to conditionally or partially set aside or dedicate a roadway to public use, provided that the users cease leaving gates open or damaging them. The dedication was declared valid, although restricted, and injunctive relief was granted both parties. These cases are thus distinguished, and are of no help to plaintiffs in their claim that the offer to dedicate the road was conditional.

■ Plaintiffs' contention that the trial court erred in granting injunctive relief against plaintiffs from interfering with the use of Creek Road by defendants and others, including the public in general, is without merit. In Chapman v. Schearf, supra, loc. cit. 229 S.W.2d 553, the defendant, as here, did not ask for affirmative relief. The court enjoined defendants from interfering in any way with the use of the road by plaintiffs "as a part of the traveling public," and also granted an unrequested injunction against plaintiffs to cease leaving gates open or damaging them in any way. This court said, loc. cit. 555, "but the trial chancellor in determining the issues of injunctive relief sought by plaintiffs properly undertook to do full, adequate and complete justice between the parties justified by the evidence. Rains v. Moulder, 338 Mo. 275, 90 S.W.2d 81, and cases therein cited. * * * The relief to defendants by way of injunction against plaintiffs was consistent with the action tried." So it is here. Plaintiffs, by the evidence, have wrongfully blocked Creek Road by reconstructing a levee across it, the public having theretofore acquired rights to travel it. Plaintiffs requested the court to declare the rights of the parties, that the dedication agreement is of no force and effect, and asked that defendants and others be enjoined from using the roadway. Defendants' answer pleads that the perma-

nent public roadway was constructed at their expense, and the same was dedicated to, accepted and used by, the public. The plaintiffs' prayer was additionally for "such further and additional relief as the Court deems appropriate." The principle of the Schearf case controls, and clearly the trial court did not err under all the pleadings and evidence to grant the injunction as appropriate thereto. The cases cited by plaintiffs, Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9; Burns v. Ames Realty Co., Mo. App., 31 S.W.2d 274; and Witte v. Cooke Tractor Co., Mo.App., 261 S.W.2d 651, are representative of those classes of cases where the relief granted is beyond the pleaded issues and evidence, and foreign to the action tried.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.